1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,              No.  2:10-cr-0231-TLN-EFB P (TEMP)

12              Respondent,

13       vs.                               ORDER AND FINDINGS AND
                                            RECOMMENDATIONS
14  HUMBERTO MORAN-TORRES,

15              Movant.

16

17       Movant Humberto Moran-Torres is a federal prisoner proceeding pro se with a motion to

18  vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1]  He challenges his

19  conviction and sentence on one count of being a deported alien found in the United States, in

20  violation of 8 U.S.C. § 1326.  He seeks post-conviction relief on the grounds that his trial and

21  appellate counsel rendered ineffective assistance.  He requests an order reversing his conviction

22  or, in the alternative, an order vacating his sentence of 120 months in prison.  Upon careful

23  consideration of the record and the applicable law, the court recommends that movant's § 2255

24  motion be denied.

25  /////

26  /////

27  _____

28       [1]  This motion was assigned, for statistical purposes, the following civil case number: No.
    2:13-cv-01954-TLN-EFB P.

                                            1

1    **I.      Procedural Background**

2            On June 17, 2010, an indictment was filed charging movant with being a deported alien

3    found in the United States, in violation of 8 U.S.C. § 1326.  ECF No. 6.  The indictment alleged

4    that movant was an alien who was previously deported on December 17, 2009, after having been

5    convicted of possession of heroin for sale.  *Id.*  Attorney Clemente Jimenez was appointed as

6    counsel of record for movant.  ECF No. 13.

7            On December 9, 2010, the government extended to movant a "fast-track" plea offer which

8    included a recommended sentence of 46 months in prison.  ECF No. 60-2.  Movant's counsel, Mr.

9    Jimenez, was advised that "fast-track" offers were typically open for 30 days.  ECF No. 106-1 at

10   8; ECF No. 89 at 104-05.  However, government counsel later agreed to "keep it open longer."

11   ECF No. 106-1 at 8; ECF No. 89 at 104-05.  Movant told his counsel he did not want to accept

12   that offer and the offer was not accepted.  ECF No. 89 at 103-04.  At a February 18, 2011 status

13   conference, the parties set a trial date.  ECF No. 30.

14           Trial commenced on April 25, 2011.  ECF No. 49.  Later that day, Mr. Jimenez informed

15   the court that movant wished to enter a guilty plea.  ECF No. 56 at 3.  The trial judge explained

16   that "there will be no plea bargain."  Attorney Jimenez responded that he had explained this to

17   movant.  *Id.*  After the judge asked movant whether he had any hesitation in pleading guilty,

18   movant stated: "I don't have the evidence that I wanted to have, I don't got no choice but to plead

19   guilty at this time."  *Id.* at 5.  The trial judge responded, "That's not good enough."  *Id.*  After

20   conferring with his counsel, movant requested to go forward with his guilty plea.  *Id.*  The judge

21   then admonished,

22                      I will allow you to plead guilty if you want to, but only if you tell
                        me that you are guilty.  Don't tell me what evidence you don't have
23                      or that you'd like to have.

24   *Id.*  Movant then confirmed that he wanted to plead guilty because he was guilty.  *Id.* at 5, 11.

25           During the subsequent plea colloquy, movant agreed that no promises had been made to

26   him in return for his plea of guilty.  *Id.* at 4, 11.  The trial judge informed movant that his

27   sentence would be imposed pursuant the federal sentencing guidelines and that he could not

28   predict what movant's actual sentence would be.  *Id.*  Movant stated that he understood this.  *Id.*

1    Movant also stated that he understood his possible maximum sentence was 20 years

2    imprisonment.  *Id.* at 9.  Movant admitted that he was an alien and that after he was deported he

3    had returned to the United States without the express consent of the Department of Homeland

4    Security or the Attorney General.  *Id.* at 13.  He stated that he was satisfied with Mr. Jimenez's

5    legal representation.  *Id.* at 7.  The trial judge accepted movant's guilty plea.

6         On May 6, 2011, movant filed a letter to the court, which was apparently written on the

7    same day he entered his guilty plea.  ECF No. 52.  Therein, movant stated that attorney Jimenez

8    had intimidated him and "wrongfully" persuaded him to plead guilty "due to [Jimenez's] own

9    failure to obtain the evidence necessary to prove my innocence."  *Id.* at 1.  Movant described

10   evidence which he claimed proved he was a United States Citizen and he requested that the court

11   appoint substitute counsel and allow him to withdraw his guilty plea.  *Id.*  Movant also stated that,

12   during the lunch break on the first day of trial, attorney Jimenez had informed him that the trial

13   court could impose a sentence of 10 years in prison if he refused to plead guilty.  *Id.*

14        On May 11, 2011, Mr. Jimenez filed a motion to withdraw from movant's case which was

15   granted on May 13, 2011.  ECF Nos. 53-55.  On June 21, 2011, movant, through his new counsel

16   Gilbert Roque, filed a motion to withdraw his guilty plea, arguing that he was not guilty of the

17   charge against him because he was a United States citizen.  ECF No. 58.  Attached to that motion,

18   among other things, was a copy of a birth certificate purporting to demonstrate that movant was

19   born in California.  ECF No. 58-1 at 2.  The motion to withdraw conceded that movant had

20   previously admitted to federal agents that he was a Mexican citizen who was born in Mexico, but

21   claimed these admissions were "done for convenience" in order to avoid adverse legal

22   consequences.  ECF No. 58 at 2.  The motion also explained that movant had used this birth

23   certificate to persuade an ICE agent in Spokane, Washington to remove an ICE detainer that had

24   been placed on him, but that another ICE Special Agent had subsequently received information

25   that the birth certificate was fraudulent.  *Id.* at 3.

26        The trial court held an evidentiary hearing on movant's motion to withdraw his guilty

27   plea.  ECF No. 62, 89.  At that hearing, movant, attorney Jimenez, and a retired deputy United

28   States Marshal testified.  ECF No. 89.  Mr. Jimenez explained the extent of his investigation into

movant's claim that he was a United States citizen and was, therefore, innocent of the charge

against him. *Id.* at 101-26.  Specifically, Jimenez stated that he received and reviewed documents

which reflected that the birth certificate from California that movant "purported to be his

authentic birth certificate" was "in fact not authentic." *Id.* at 106.  Mr. Jimenez also received in

discovery "an expert opinion and analysis of the birth certificate" which concluded that the birth

certificate was fraudulent. *Id.*

Attorney Jimenez also testified that he conducted an investigation into movant's claim

that an ICE agent in Spokane named Susan Philip had concluded his birth certificate was genuine.

*Id.* at 107.  He explained:

> One additional thing that I had done at the onset of the case, my
> client had indicated to me that he had what he reported to be a
> recorded interview with an ICE Agent by the name of Susan.  He
> said at the time her name was Susan Philip.  I wasn't able to locate
> anybody by that name.
>
> I was later able to determine that it was a woman by the name of
> Susan Philen who does work out of the Washington District ICE
> Office.  I actually spoke with her specifically with regard to the
> fraudulent birth certificate.
>
> My client was of the belief that in speaking with her that his current
> situation would be cleared up.  I did not believe that to be the case,
> notwithstanding the representations that he made to me about the
> substance of the conversation that he had had with her.  I did
> contact her.
>
> I was able to speak with her on the phone.  And essentially, what
> she indicated to me was that she did recall Mr. Moran-Torres
> specifically because of the birth certificate issue.  She indicated to
> me that at the time that she spoke with him that she did in fact lift
> the immigration hold that had been placed on him based on what
> her initial analysis of the birth certificate showed, or rather that she
> accepted that birth certificate as authentic.
>
> She subsequently indicated to me that further review by one of her
> colleagues in ICE concluded that it was a fraudulent document.
> And she indicated to me that had she known that information at the
> time, she would not have lifted the hold.
>
> And she went on I believe to indicate to me that to her
> understanding, he had in fact been convicted of an unlawful reentry
> as a result of that particular – being in the country at that particular
> time with respect to her communication with him.

*Id.* at 107-08.

When Mr. Jimenez was asked why he did not obtain the recording of movant's interview with Ms. Philen, he explained:

> I indicated to (movant) that I didn't believe that it was necessary to obtain that given the fact that, one, subsequent to that interview that he had entered a plea to violation of the 1326 and had been deported and shortly thereafter returned to the country.  But, then on top of that, the fact that there had been investigation conducted by the federal public defender's office and in the Washington district that had looked into this as well.
>
> For those reasons, I did not believe that it was necessary for me to obtain that recording because regardless of what he may have represented to her or vice versa, in the end with the information that was obtained with respect to the birth certificate, it seems to me that the outcome wouldn't have been different as far as Agent Philen was concerned.

*Id.* at 123-24.  Based on his investigation, Jimenez did not believe any further follow-up was necessary into the authenticity of movant's purported birth certificate.  *Id.* at 124.  He also testified that he explained to movant why he did not believe it was necessary for him to go to the "hospital where [movant] was born" or to the schools movant had attended, but movant did not "accept" his explanation.  *Id.* at 125.

Mr. Jimenez also testified that movant had entered the United States illegally on the basis of these fraudulent documents.  Counsel explained:

> I repeatedly told him with respect to that particular contention that he was incorrect as to the law.  He indicated to me that he had come across the border.  He had presented some documentation, and his belief was that if it had in fact been fraudulent, they would have discovered that and he would not have been allowed into the country.
>
> At some point I specifically pointed out in the discovery that I had furnished to him that on repeated occasions, he had signed documentation indicting that he would not return to the country without permission from the appropriate authorities in the United States.
>
> And so simply coming to the country, crossing the border, presenting a documentation that he at least had been informed previously was fraudulent, would not suffice legally speaking for him to be legally in the country.

*Id.* at 109.

/////

5

Mr. Jimenez further testified that after conducting the investigation described above, he did not believe that movant had a "viable defense" to the charge against him based on his claim that he was a United States citizen. *Id.* at 110.

Mr. Jimenez also explained that by the time movant's trial commenced, the government's initial "fast-track" offer was "no longer on the table." *Id.* He stated:

> So, prior to the commencement of trial, I attempted one more time to convince him that it was not in his best interest to proceed to trial and that he should resolve the case, notwithstanding the fact that the fast track offer was no longer on the table. And he would have to plea open ended and see what happened at sentencing. So, before the trial began, I did attempt to convince him to resolve the case. He said no.

*Id.* Counsel further testified that "over the course of the year that I represented [movant], he was adamant that he did not want to take any deal." *Id.* at 116-17. He explained:

> Well, at the time when the fast track offer was open, I indicated it was in his best interest to accept that. At some point during the course of my representation, obviously, that fast track offer was taken off the table.

*Id.* at 125.

Movant also testified at the evidentiary hearing. He claimed that he was a United States citizen. He provided to the court the birth certificate that was attached to his motion to withdraw his guilty plea. *Id.* at 10-89. He testified that counsel Jimenez told him if he didn't plead guilty he was going to get "hammered," so he decided to plead guilty. *Id.* at 13-14. Movant stated that he asked his counsel for more time "to see if we could get a hold of more evidence," but Jimenez told him he had to "make the decision today." *Id.* at 14.

Movant further testified that he asked attorney Jimenez to obtain the videotape of his interview with Ms. Philen and "to get a hold of her and call her and try to get the evidence that I needed to present." *Id.* at 15. He also testified that he asked Jimenez to verify his birth certificate; that Mr. Jimenez told movant that he was "going by the past records from Washington." *Id.* Movant testified that he used his birth certificate to obtain an identification card from the state of Washington and a social security card. *Id.* at 21.

/////

6

Movant denied that he had ever been told the birth certificate he had been using was false. *Id.* at 17-18.  Movant was extensively cross-examined by government counsel about the authenticity of his purported birth certificate and was also examined by counsel Roque on this subject. *Id.* at 27-89.  When Mr. Roque asked movant whether he believed he was a United States citizen, the following colloquy occurred:

> A.  Yes, I do.
>
> Q.  Do you believe you are a U.S. citizen based on the document – the birth certificate that you have before you?
>
> A.  Yes.
>
> Q.  Now, I have gone over with you that document based on a comparison that was made with a document that was given to you previously.  That was given to an immigration officer by the name of Skolski; do you remember that?
>
> A.  Yes.
>
> Q.  And I have explained to you the difference between your birth certificate and that birth certificate; is that correct?
>
> A.  Yes.
>
> Q.  And you understand the differences that the individual who was analyzing those two birth certificates are saying, do you not?
>
> A.  No, I don't because I see the same signature from the same birth certificate for both of them.
>
> Q.  So, you see signatures, and they appear the same; is that correct?
>
> A.  They appear the same.  They also got the same signature from the same doctor.
>
> Q.  And you have seen the numbers on the top right-hand side of those two birth certificates, correct?
>
> A.  Yes.
>
> Q.  The one that you use and then the one that was sent by the Department of Vital Statistics here in California?
>
> A.  Yes.
>
> Q.  And I have gone over those numbers and explained them to you; do you recall that?
>
> A.  Yes.

1

Q.  All right.  And the very last set of numbers on your certificate has 907,000 and odd numbered beyond that; do you recall that number?

2

3

A.  Yes.

4

Q.  And part of the documentation indicates that that refers to the number of births in the state of California.  Do you remember me talking to you about that?

5

6

A.  Yes, I do.  I also remember when I asked you about that, that birth certificate you showed me, it's wrote with pen on it.  And it's not made up with typing – type writer.

7

8

Q.  Now, we are talking about the numbers on the right right now.  Those numbers are stamped on somehow; isn't that right?  That's not handwriting, correct?

9

10

A.  Yes.

11

Q.  And in the explanation made of what is called the authentic birth certificate, which is the one that your certificate is being compared to, indicates that there are not more than 500,000 births in California in any one year, correct?

12

13

A.  Yes.

14

Q.  Do you remember saying that – hearing me tell you that?

15

A.  Yeah, that's what it says on the paper.

16

Q.  And your document says over 900,000, correct?

17

A.  I don't remember how many it says.

18

Q.  I am showing you the Defense Exhibit A, which you have seen previously today; is that correct?

19

20

A.  Yes.

21

Q.  Can you please tell us what the number is on the top right, which is the last set of numbers?  It starts with 907.

22

23

A.  907052.

24

Q.  Okay, After the explanation, however, that I have given you, you still believe that your certificate is a valid certificate, correct?

25

A.  Yes, I do.

26

Q.  And you're basing that on the signatures that are on your document, correct?

27

28

8

A.   I am also basing it on the way they made the other birth certificate that has a lot of stuff that is created.  I believe it's created by the government or whoever made that.

Q.  I understand.

*Id.* at 86-89.

David Gump, retired deputy United States Marshal, testified at the evidentiary hearing that he was working as a deputy Marshal on the day that movant entered his guilty plea.  While he was alone in the elevator with movant, movant asked him if he would tell his attorney that he needed to speak with him because he wanted to change his plea.  *Id.* at 93-94.  After movant spoke with his attorney, he entered the courtroom and informed the court, through counsel, that he wished to change his plea.  *Id.* at 95-96.

On July 29, 2011, the trial court held a hearing in order to announce its decision on movant's motion to withdraw his guilty plea.  The court opined that movant's plea was not coerced by his counsel, but was given freely and voluntarily.  ECF No. 85.  The court noted that at the change of plea hearing movant testified that no threats or promises had been made to induce him to plead guilty, that he was pleading guilty freely and voluntarily because he was in fact guilty, that he was satisfied with his counsel's representation, and that he agreed with the prosecutor's recitation of a factual basis for the plea of guilty.  *Id.* at 5.

With regard to movant's allegation that his trial counsel induced his plea of guilty by telling him that he could receive a ten-year sentence if he was convicted by a jury, the court observed that, "even if true that he felt intimidated, his attorney was simply advising the defendant of the realities of defendant's potential sentence, if convicted, under the advisory guidelines."  *Id.*  The court concluded that counsel's advice about his sentence "was neither erroneous, nor did it grossly mischaracterize the possibilities."  *Id.* at 6-7.

The trial court specifically found that movant's assertion that counsel Jimenez coerced him to plead guilty during the lunch hour on the first day of trial "lack[ed] credibility."  *Id.* at 7-8.  The court also found that movant had testified falsely when he stated that Mr. Jimenez never discussed the "fast-track" plea offer from the government with him.  *Id.* at 8-9.  The court summarized attorney Jimenez's testimony, as follows:

Mr. Jimenez also testified that it was against his advice that he proceeded to trial. In his trial preparation, he received documents from the federal district court in Washington, including a copy of defendant's alleged birth certificate and a report that the birth certificate was not authentic. He also received a report from the U.S. Attorney's office in Sacramento which included an expert analysis explaining why the birth certificate was fraudulent.

The two similar analyses of the birth certificate defendant claimed was authentic convinced him, convinced the attorney it was falsified.

He also interviewed the ICE agent in Washington, by telephone, who lifted the immigration detainer lodged against the defendant in a Washington prosecution when defendant showed his birth certificate. She lifted the detainer because she believed it was authentic. She told Mr. Jimenez in the interview when she later learned it was not authentic, she told defendant this, and that she had been wrong in lifting the detainer. The defendant then pled guilty in federal court in Washington to unlawful entry testifying there during a Rule 11 colloquy that he was a Mexican citizen.

*Id.* at 9. The trial judge found that movant's claim "that his attorney was ineffective for not checking the Washington ICE agent's lifting of the detainer . . . is also false." *Id.* The court concluded:

I find defendant changed his mind of his own volition without any coercion from his attorney and, as the record reflects, his guilty plea was free and voluntary. I also find defendant has not shown any fair and just reason to withdraw his guilty plea. Therefore, defendant's motion is denied.

*Id.* at 10.

The trial court subsequently sentenced movant to 120 months in prison and 36 months of supervised release. ECF No. 72. At the sentencing hearing, the judge noted that movant had "lied to the Court under oath when he testified at the evidentiary hearing . . . in connection with his claim that his plea of guilty was coerced and involuntary." ECF No. 86 at 5-6. He stated, "in a nutshell, defendant committed perjury during the hearing." *Id.* at 6. The judge also explained:

The probation officer also recommends a two-level enhancement based on a letter the defendant sent to the Court on November 16, 2010, in which he claimed he was a U.S. citizen and attached to the letter as proof what purported to be a certificate of – a certified copy of a Los Angeles County recorder's certificate of live birth.

1
2
3

> Copies of this certificate were given to the assistant United States Attorney and defense attorney immediately at the next status conference along with a copy of the defendant's letter. This birth certificate has been determined by an expert to be fraudulent.

4   *Id.*   The court noted that "on nine previous occasions, defendant admitted to immigration

5   authorities that he had illegally entered the United States." *Id.* at 8.

6   **II.   Applicable Law**

7   **A.   Motions Pursuant to 28 U.S.C. § 2255**

8   A federal prisoner making a collateral attack against the validity of his or her conviction

9   or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to

10   28 U.S.C. § 2255, filed in the court which imposed sentence. *Tripati v. Henman*, 843 F.2d 1160,

11   1162 (9th Cir. 1988).  Under § 2255, the federal sentencing court may grant relief if it concludes

12   that a prisoner in custody was sentenced in violation of the Constitution or laws of the United

13   States. *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999).  To warrant relief, a

14   petitioner must demonstrate the existence of an error of constitutional magnitude which had a

15   substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v.*

16   *Abrahamson*, 507 U.S. 619, 637 (1993).  Relief is warranted only where a petitioner has shown

17   "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v.*

18   *United States*, 417 U.S. 333, 346 (1974).

19   **B.   Ineffective Assistance of Counsel**

20   The clearly established federal law for ineffective assistance of counsel claims is

21   *Strickland v. Washington*, 466 U.S. 668 (1984).  To succeed on a *Strickland* claim, a defendant

22   must show that (1) his counsel's performance was deficient and that (2) the "deficient

23   performance prejudiced the defense." *Id.* at 687.  Counsel is constitutionally deficient if his or

24   her representation "fell below an objective standard of reasonableness" such that it was outside

25   "the range of competence demanded of attorneys in criminal cases." *Id.* at 687–88 (internal

26   quotation marks omitted).  "Counsel's errors must be 'so serious as to deprive the defendant of a

27   fair trial, a trial whose result is reliable.'" *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770,

28   787-88 (2011) (quoting *Strickland*, 466 U.S. at 687).

1   Reviewing courts must "indulge a strong presumption that counsel's conduct falls within

2   the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  There is in

3   addition a strong presumption that counsel "exercised acceptable professional judgment in all

4   significant decisions made."  *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (citing

5   *Strickland*, 466 U.S. at 689).  This presumption of reasonableness means that the court must "give

6   the attorneys the benefit of the doubt," and must also "affirmatively entertain the range of

7   possible reasons [defense] counsel may have had for proceeding as they did."  *Cullen v.*

8   *Pinholster*, ___ U.S. ___, ___, 131 S. Ct. 1388, 1407 (2011) (internal quotation marks and

9   alterations omitted).  A reviewing court is required to make every effort "to eliminate the

10   distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct,

11   and to evaluate the conduct from counsel's perspective at the time."  *Strickland*, 466 U.S. at 669.

12   *See also Richter*, 562 U.S. at 107 (same).

13   Defense counsel has a "duty to make reasonable investigations or to make a reasonable

14   decision that makes particular investigations unnecessary."  *Strickland*, 466 U.S. at 691.  Counsel

15   must, "at a minimum, conduct a reasonable investigation enabling him to make informed

16   decisions about how best to represent his client."  *Hendricks v. Calderon*, 70 F.3d 1032, 1035 (9th

17   Cir. 1995) (quoting *Sanders*, 21 F.3d at 1456 (internal citation and quotations omitted).

18   Prejudice is found where "there is a reasonable probability that, but for counsel's

19   unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466

20   U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the

21   outcome."  *Id.*  "The likelihood of a different result must be substantial, not just conceivable."

22   *Richter*, 131 S. Ct. at 792.

23   The *Strickland* standards apply to appellate counsel as well as trial counsel.  *Smith v.*

24   *Murray*, 477 U.S. 527, 535-36 (1986); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989).

25   However, an indigent defendant "does not have a constitutional right to compel appointed counsel

26   to press nonfrivolous points requested by the client, if counsel, as a matter of professional

27   judgment, decides not to present those points."  *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

28   /////

Counsel "must be allowed to decide what issues are to be pressed." *Id.* Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined." *Id. See also Smith v. Stewart,* 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (Counsel is not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy."). There is, of course, no obligation to raise meritless arguments on a client's behalf. *See Strickland*, 466 U.S. at 687-88 (requiring a showing of deficient performance as well as prejudice). Thus, appellate counsel is not deficient for failing to raise a weak issue. *See Miller*, 882 F.2d at 1434. In order to establish prejudice in this context, petitioner must demonstrate that, but for appellate counsel's errors, he probably would have prevailed on appeal. *Id.* at 1434 n.9.

## III.    Movant's Claims

The instant motion under § 2255 raises several claims of ineffective assistance of trial counsel. Each is addressed in turn below.

### A.  Failure to Investigate

Movant's first ground for relief is that counsel Jimenez rendered ineffective assistance in failing to adequately investigate and present evidence that movant is a United States citizen. ECF No. 94 at 6-9. He makes the following allegations:

> The Petitioner alleges that prior to his arrest, he has provided various documents (i.e. Birth Certificate, California I.D., Social Security Card, etc). pertaining to his citizenship as a "legal citizen" of the United States. These legal documents ha[ve] been verified through government officials, but more importantly, thru I.E.C. Susan Phillip [sic], whom has recorded a 45-minute interview tape with Petitioner of his Immigration Status and has lifted an Detainer on Petitioner on or about March 4, 2008, verifying Petitioner's citizenship as a legal citizen in the United States. *See Exhibit "A"* (Verified Legal Documents and U.S. Department of Homeland Security verification of Citizenship)

> The petitioner contends that had this Information been presented to the Court, the outcome of his case may have been different. Evidence of the Birth Certificate, California I.D., Social Security Card and the U.S. Department Homeland Security Identification by I.C.E. Agent Susan Phillip [sic] verifying citizenship, could have at the very least cast doubt upon the veracity of the government's evidence and at best provided evidence to the Court of the Petitioner's innocence (i.e. U.S. Citizenship).

13

1
2
3
4
5
6
7

> Here, Petitioner expressly explained to counsel that his Birth Certificate was valid.  Yet, counsel failed to address this issue to the court.  Furthermore, had counsel investigated the background of Petitioner's parents, he would have notice that Petitioner's parents were residents, and that Petitioner was a minor at this time.  In the present case, the Petitioner is not suddenly alleging that there was evidence counsel could have uncovered, but that Petitioner presented counsel with this evidence and counsel failed to utilize it or investigate further.  Had counsel held the government to the duty of disclosure, its burden or at least question I.C.E. Agent Susan Phillip [sic] of the Petitioner's Citizenship Status and Birth Certificate, the Court would have been better able to assess their evidence.

8   *Id.* at 8-9.  Movant argues that Mr. Jimenez's failure to "investigate the alleged false Birth

9   Certificate and Petitioner's citizenship status and/or present documents that could have benefit

10  [sic] the defense fell below an objective standard of reasonableness and prejudice the Petitioner's

11  case." *Id.* at 9.

12          Petitioner has failed to demonstrate either deficient performance or prejudice with respect

13  to this claim.  The record reflects that Jimenez conducted, at a minimum, a reasonable

14  investigation into movant's claims that he was a United States citizen.  As set forth in detail

15  above, Mr. Jimenez explained his efforts to investigate this issue at the evidentiary hearing before

16  the trial judge.  He also explained why he did not believe it was necessary go to the hospital

17  where movant was allegedly born or the schools he attended, as movant had asked him to do.

18  Jimenez's investigation of this issue was well within the wide range of reasonable professional

19  assistance, and certainly did not constitute deficient performance.  Petitioner has failed to show

20  prejudice.  There is no evidence that further investigation into this issue would have uncovered

21  anything beneficial to movant or would have led to a different result.  As Mr. Jimenez explained,

22  movant had previously pleaded guilty to a violation of Section 1326 and had been deported and

23  shortly thereafter returned to the country.  Jimenez also explained that there had been an

24  investigation conducted by the federal defender's office in Washington as to movant's claims

25  regarding the birth certificate.  Further, movant's explanation to Jimenez that if the

26  documentation movant had presented when he crossed the border had been fraudulent he would

27  not have been allowed into the country did not warrant that Jimenez do  more.  Jimenez

28  repeatedly confronted movant with the discovery that had been furnished showing movant had

1   signed documentation indicting that he would not return to the country without permission from

2   the appropriate authorities and explained to movant on multiple occasions that simply crossing

3   the border and presenting documentation that he had been informed of previously was fraudulent,

4   would not provide him a legal defense to the charge he was facing.  Indeed, following the

5   evidentiary hearing the trial judge concluded that movant's claim that he was born in the United

6   States was false and fraudulent.

7           For the above reasons, movant is not entitled to relief on this claim.

8           **B.  Legal Advice Regarding Guilty Plea**

9           In his second ground for relief, movant claims that trial counsel Roque rendered

10  ineffective assistance in giving him "bad legal advice about pleading guilty."  *Id.* at 10-13.  He

11  argues that, had Mr. Roque given him "effective assistance," there is a "possibility" he would

12  have received a sentence of 46 months in prison.  Movant explains:

13              In this case, there is no dispute 1) that an [sic] previously adopted
              plea agreement offer for 46-months imprisonment was made by the
14              Government and 2) that counsel Mr. Roque incorrectly advised
              Petitioner about the possible sentence he was facing should he not
15              proceed to trial and accept the governments plea offer.

16  *Id.* at 12.  Movant states that Mr. Roque told him about the plea offer from the government, but

17  failed to give him correct advice about his possible sentence if he stopped the trial and accepted

18  the plea offer.  *Id.* at 12-13.  Movant argues that he should be allowed to accept the government's

19  initial "fast-track" plea offer.  *Id.* at 13.

20          The government counters that movant is not entitled to relief on this claim because the

21  government's original offer had already expired by the time attorney Roque became movant's

22  attorney of record.  The government argues that Roque did not provide ineffective assistance in

23  failing to advise movant to accept an offer that was no longer open.  ECF No. 105 at 14-15.

24  Movant plead guilty well before Mr. Roque was appointed as counsel of record and Roque

25  merely litigated movant's motion to withdraw his guilty plea and subsequent sentencing issues.

26  *Id.* at 14-15.  As the government notes, there is no indication in the record that any plea offer

27  remained open while Roque was representing movant.

28  /////

1    In the traverse, movant argues that although attorney Roque did not represent him at the

2    time the government's plea offer was extended to him, Roque was "aware" of that offer "prior to

3    sentencing, after reviewing Petitioner's file."  ECF No. 114 at 4.  Movant contends that "if Mr.

4    Roque would have given Petitioner effective assistance and/or proper legal advice, he would have

5    litigated Petitioner's plea offer that was initially offered by the government."  *Id.*  As Movant

6    explains his position, Roque should have undone the consequences of Movant's original decision

7    to reject the plea offer at the time that it was available.  He asserts that:

8    > For instance, Mr. Roque should have placed Petitioner in the
9    > position that he was in during the time that the initial "fast-track"
     > plea offer 46-months was offered, whenever Mr. Jimenez was
10   > representing Petitioner.  This would have been the logic and
     > CORRECT THING for Mr. Roque to do, rather than litigating
11   > Petitioner's motion to withdraw his guilty plea and sentencing
     > issues.

12   > Here, the government contends that there is no indication in the
     > record that any plea offer remained open while Mr. Roque was
13   > representing Petitioner.  However, it is logical that such an offer
     > would have remained open after Petitioner pleaded guilty.
14

15   *Id.* at 4-5.  Movant thus argues that this court should now "put Petitioner in the position that he

16   was from the beginning, and that is allowing him to plea to the 'fast-track' plea offer of 46-

17   months."  *Id.* at 5.

18    The *Strickland* standards apply to claims of ineffective assistance of counsel involving

19   counsel's advice offered during the plea bargain process.  *Missouri v. Frye*, ___ U.S. ___, 132

20   S.Ct. 1399 (2012); *Lafler v. Cooper*, ___ U.S. ___, 132 S.Ct. 1376 (2012); *Padilla v. Kentucky*,

21   559 U.S. ___, 130 S.Ct. 1473 (2009); *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Nunes v. Mueller*,

22   350 F.3d 1045, 1052 (9th Cir. 2003).  Here, however, the record reflects that the government's

23   original "fact-track" offer was no longer open when attorney Roque was movant's counsel of

24   record.  As explained above, Roque was substituted in as movant's counsel after the

25   government's plea offer had expired.  At that time, movant had already entered a guilty plea

26   without a plea offer.  Mr. Roque did not render ineffective assistance in failing to advise movant

27   to accept a plea offer that had already expired, or in failing to accurately advise movant of the

28   sentencing consequences of accepting an expired offer.  Simply put, the government's offer was

1   no longer available to be accepted by movant, regardless of the advice attorney Roque chose to

2   give.  There is no evidence before the court that the government would have reinstated the "fast

3   track" offer after Roque became movant's attorney of record.

4        For the foregoing reasons, movant has failed to demonstrate either deficient performance

5   or prejudice with respect to this claim of ineffective assistance of counsel.  Accordingly, movant

6   is not entitled to relief.

7        **C. Failure to Argue for a Reduction for Acceptance of Responsibility**

8        In his third ground for relief, movant claims that attorney Roque rendered ineffective

9   assistance in filing to argue for a three-level reduction in his offense level for acceptance of

10  responsibility, pursuant to U.S.S.G. §§ 3E1.1(a)-(b).  ECF No. 94 at 14.  He argues that if

11  "counsel had done so, Petitioner would have received a lower sentence under the sentencing

12  guidelines." *Id.*  The essence of this claim is to blame counsel for pursuing Movant's efforts to

13  set aside the guilty plea.

14       Movant argues that the fact he ultimately pled guilty and admitted the elements of the

15  crime constitutes "significant evidence" that he accepted responsibility for his actions. *Id.* at 16.

16  He contends that the reason the district court did not grant a three-level reduction for acceptance

17  of responsibility is that he withdrew his original guilty plea and proceeded to trial. *Id.* at 15.

18  However, he argues that this fact should have had "no probative value" because he later pled

19  guilty and admitted that the factual basis for his plea was true. *Id.* at 16; ECF No. 114 at 6.

20       Respondent counters that movant was not entitled to a reduction in his offense level for

21  acceptance of responsibility because he continued to assert that he was born in the United States

22  and was therefore a United States citizen.  ECF No. 105 at 16-18.  Respondent notes that in his

23  informal objections to the presentence report, counsel Roque originally sought a reduction in

24  movant's offense level for acceptance of responsibility, arguing that "although [movant] went

25  through a change of plea admitting alienage and then moved to withdraw his plea claiming he

26  was a United States citizen, he now accepts that he was born outside the United States."  ECF No.

27  111 at 20-21.  However, Mr. Roque was later forced to amend his request for this sentence

28  reduction in an email to the probation office, in which he stated:

17

> In my objection letter of September 15, 2011, I argued that Mr. Moran Torres was now accepting that he was born outside the United States. Mr. Moran Torres is now recanting that statement and is not accepting alienage. He again is stating that his birth certificate is valid and that he is a U.S. citizen.

*Id.* at 24.

Being an alien, i.e., not a citizen or national of the United States, is a "core element" of the offense with which movant was charged. 8 U.S.C. § 1326; *United States v. Marguet-Pillado*, 648 F.3d 1001, 1007 (9th Cir. 2011). U.S.S.G. § 3E1.1(a) provides for a two-level reduction in offense level if a defendant "clearly demonstrates acceptance of responsibility for his offense." "A defendant who pleads guilty is not automatically entitled to a two-level reduction." *United States v. Morales*, 972 F.2d 1007, 1010 (9th Cir. 1992).

The record demonstrates that while movant admitted at the change of plea hearing that the factual basis for his plea was true and that he was an alien, he subsequently changed his mind, attempted to set aside his plea, and asserted forcefully that he was a United States citizen and therefore not an alien. At the sentencing proceedings the judge noted that "to date, defendant denies again foreign alienage." ECF No. 86 at 8. Under these circumstances, counsel Roque did not render ineffective assistance in failing to argue at the sentencing proceedings that movant should receive a reduction in his offense level for acceptance of responsibility. Any such argument would have flatly contradicted the very factual position that Movant was insisting on at the time; i.e. his continued insistence that he is not an alien. There was nothing inadequate and certainty no prejudice to Movant in counsel's failure to present such an argument. *See Jones v. Ryan*, 691 F.3d 1093, 1101 (9th Cir. 2012) ("It should be obvious that the failure of an attorney to raise a meritless claim is not prejudicial"); *Rhoades v. Henry*, 638 F.3d 1027, 1036 (9th Cir. 2011) (no prejudice from trial counsel's failure to investigate or raise two claims on appeal where "neither would have gone anywhere"); *Jones v. Smith*, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (citing *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985)) (an attorney's failure to make a meritless objection or motion does not constitute ineffective assistance of counsel)); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take a futile action can never be deficient performance").

The court finds that movant's trial counsel acted within the "wide range of reasonable professional assistance" in originally arguing for a decrease in movant's offense level for acceptance of responsibility but then withdrawing that argument when it became clear that movant refused to admit he was an alien.  There is no evidence before the court that Roque rendered ineffective assistance in connection with his argument on the applicability of a reduction in movant's offense level for acceptance of responsibility.  Accordingly, movant is not entitled to relief on this claim.

### D. Failure to Challenge Criminal History Calculation

Movant claims in his third ground for relief that Mr. Roque rendered ineffective assistance in failing to argue at the sentencing proceedings that movant's prior convictions for illegal re-entry and second degree assault should be counted as only one conviction for purposes of calculating his criminal history score under the Sentencing Guidelines.  ECF No. 94 at 17.  He argues that these convictions are "related" and should have been treated as "one sentence for criminal history purpose."  *Id.*  Citing U.S.S.G. § 1B1.3 (Relevant Conduct (Factors that Determine the Guideline Range)), movant argues his two prior convictions were "part of a single common scheme," arose from "the same conduct," and were "connected by at least one common factor."  *Id.; see also* ECF No. 114 at 7.  He argues that "because counsel never made an objection to the criminal history calculation, Petitioner was sentence[d] on the basis of information that was fatally insufficient and unreliable."  ECF No. 94 at 18.

The record shows that movant was arrested in Seattle, Washington for second degree assault on December 19, 2006, and was convicted of that crime in state court on May 4, 2007.  Presentence Report (PSR) ¶¶ 40-44.[2]  He was released from prison in July, 2008 and arrested on federal immigration charges on August 11, 2008.  He was convicted of illegal re-entry in the United States District Court for the Western District of Washington on June 19, 2009.  *Id.*  In the presentence report, the probation officer assigned three criminal history points for the state assault conviction and three additional points for the federal immigration conviction.  *Id.* at ¶¶ 40, 44.

---

[2]  Although the presentence report has not been filed with the court, the court has independently reviewed the report.

1    The district court adopted the recommendations in the presentence report, counted movant's

2    second degree assault and illegal re-entry convictions separately for criminal history purposes,

3    and assigned movant a criminal history score of 6.  ECF No. 86 at 8.  Movant argues that attorney

4    Roque should have urged the district court to count his assault and re-entry convictions as one

5    conviction and to impose a criminal history score of 3.  ECF No. 94 at 17-18.

6         As respondent points, out, pursuant to U.S.S.G. § 4A1.2(a)(2), prior sentences are

7    "always" counted separately for purposes of calculating a defendant's criminal history score "if

8    the sentences were imposed for offenses that were separated by an intervening arrest."  *See also*

9    *United States v. Asberry*, 394 F.3d 712, 719 (9th Cir. 2005) ("If an intervening arrest did separate

10   the offenses, our inquiry is over: the offenses are unrelated for the purposes of the Guidelines").

11   Here, movant's convictions for second degree assault and unlawful re-entry were separated by an

12   intervening arrest.  Accordingly, they were properly counted as two separate convictions for

13   purposes of calculating movant's criminal history score.  *Id.*

14        In addition, U.S.S.G. § 4A1.2(a)(2) provides that if there is no intervening arrest, prior

15   sentences should be counted separately unless "(A) the sentences resulted from offenses

16   contained in the same charging instrument," or "(B) the sentences were imposed on the same

17   day."  Here, movant's two sentences resulted from offenses that were contained in separate

18   charging instruments (one in state court and one in federal court), and his sentences were imposed

19   on different days.  Accordingly, even if an intervening arrest did not separate the two convictions,

20   they were appropriately counted separately by the district court in determining movant's criminal

21   history score.  *Id.*  Movant has failed to show that application of the considerations set forth in

22   U.S.S.G. § 1B1.3, or any other considerations, would had resulted in a decision by the district

23   court to count his prior convictions together in determining his criminal history score.

24        In light of the above, movant's counsel did not render ineffective assistance in failing to

25   argue that movant's prior convictions for second degree assault and unlawful re-entry should be

26   scored together for purposes of determining movant's criminal history score.  As set forth above,

27   counsel's failure to make a meritless argument does not constitute ineffective assistance.

28   *Rhoades*, 638 F.3d at 1036; *Jones v. Smith*, 231 F.3d at 1239 n.8; *Rupe*, 93 F.3d at 1445.

1    Accordingly, petitioner is not entitled to relief on this claim.

2                 **E. Ineffective Assistance of Appellate Counsel**

3           In his next claim for relief, movant argues that his appellate counsel rendered ineffective

4    assistance in failing to raise a claim that the district court erred in applying a two-level sentence

5    enhancement for obstruction of justice.  ECF No. 94 at 18.

6           The district court applied this enhancement to movant's sentence for the following

7    reasons:

8              In defendant's formal written objections to the presentence report,
          he raises essentially one relevant objection, that is to the probation

9              officer's recommendation that the defendant receive a two-level
          enhancement pursuant to guideline Section 3C1.1(a) for obstruction

10             of justice.  The recommended enhancement in the presentence
          report is based on defendant's having lied to the Court under oath

11             when he testified at the evidentiary hearing held on July 25, 2011.

12             This hearing was held on defendant's motion to withdraw his guilty
          plea.  The Court made a finding during the hearing that the

13             defendant lied in connection with his claim that his plea of guilty
          was coerced and involuntary.  These lies under oath were material

14             to defendant's claim.  Defendant's testimony was found by the
          Court to be untrue.  In a nutshell, defendant committed perjury

15             during the hearing.

16             The probation officer also recommends a two-level enhancement
          based on a letter the defendant sent to the Court on November 16,

17             2010, in which he claimed he was a U.S. citizen and attached to the
          letter as proof what purported to be a certificate of – a certified

18             copy of a Los Angeles County recorder's certificate of live birth.
          Copies of this certificate were given to the assistant United States

19             Attorney and defense attorney immediately at the next status
          conference along with a copy of the defendant's letter.  This birth

20             certificate has been determined by an expert to be fraudulent.  See
          Exhibit 4 to the government's sentencing memorandum.

21

22             Defendant's objection is overruled, and the Court will impose the
          two-level enhancement as recommended by the probation office.

23   ECF No. 86 at 5-6.  Movant argues the district court should not have imposed this enhancement

24   because there was no specific finding that movant "gave false testimony, concerning a material

25   matter, with willful intent to deceive, whenever he testified at the Evidentiary Hearing held on

26   July 25, 2011." ECF No. 94 at 19.  Movant further argues that "federal law defines perjury as

27   giving false testimony rather than as a result of confusion, mistake, or faulty memory."  *Id.*

28   /////

                          21

1        The record reflects that movant's appellate counsel filed a brief pursuant to *California v.*

2   *Anders*, 386 U.S. 738 (1967), in which she concluded that there were no arguable issues on

3   appeal.  ECF No. 109.  In her accompanying memorandum, counsel explained that she had

4   considered a challenge to the district court's imposition of a sentence enhancement for

5   obstruction of justice but had determined that the claim lacked merit.  *Id.* at 22-23.  The Ninth

6   Circuit reviewed movant's pro se supplemental opening and reply brief, in which he raised this

7   claim himself; and the government's answering brief, which opposed this claim in depth; and

8   agreed that there were no arguable grounds for appellate relief.  ECF No. 110 at 3-6, 40-50, 71-

9   72.

10        After a review of the record, this court concludes that appellate counsel's decision not to

11   raise a claim challenging the district court's imposition of a sentence enhancement for obstruction

12   of justice was not outside the wide range of reasonable professional assistance.  The record

13   supports the conclusion that movant obstructed justice by presenting a document to the court

14   which he knew to be false and by consistently asserting, contrary to the evidence, that he was

15   born in the United States and that his guilty plea was coerced.  Movant has also failed to

16   demonstrate prejudice, or that he would have prevailed on this claim had it been raised on appeal.

17   Accordingly, he is not entitled to relief on his claim of ineffective assistance of appellate

18   counsel.[3]

19   /////

20   /////

21   /////

22

23        [3]  Respondent construes a brief statement made by movant in his argument on this claim
   as a separate claim that his appellate counsel rendered ineffective assistance in filing an appeal

24   without seeking any input from movant.  ECF No. 105 at 21-22.  It does not appear to this court
   that movant is raising such a claim.  If he were, however, the claim is vague, conclusory, and

25   unsupported with any factual recitation, and is contradicted by the record before the court.  *See.*
   *Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995) (quoting *James v. Borg*, 24 F.3d 20, 26 (9th

26   Cir. 1994) ("It is well-settled that '[c]onclusory allegations which are not supported by a
   statement of specific facts do not warrant habeas relief'")); ECF No. 109 (explaining appellate

27   counsel's interactions with movant before the appellate brief was filed).  Accordingly, any such

28   claim must be denied.

**IV.  Waiver of Attorney-Client Privilege/Request for Discovery**

Respondent seeks a finding from this court that movant has waived the attorney-client privilege and work product protection by claiming that his trial and appellate counsel provided ineffective assistance.  Respondent also requests leave to conduct unspecified discovery on these claims after the court makes a finding of waiver.  ECF No. 105 at 23-24.  These requests are denied as moot.  For the reasons set forth above, movant has failed to demonstrate entitlement to relief on any of his claims before this court and additional discovery by the government is unnecessary.  Accordingly, there is no good cause for further discovery in this matter.  *See* Rule 6(a), Rules Governing Section 2255 Proceedings.

**V. Conclusion**

For the foregoing reasons, IT IS ORDERED that respondent's request for an order finding that movant has waived the attorney-client privilege and work product doctrine by claiming that his trial and appellate counsel provided ineffective assistance is denied.

Further, IT IS HEREBY RECOMMENDED that:

1.  Movant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 be denied; and

2.  The Clerk of the Court be directed to close the companion civil case No. 2:13-cv-01954-TLN-EFB P.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Rules Governing Section

2255 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  January 20, 2016.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE